UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

PENG GUO, Ph.D.,

        Plaintiff,

Case No.
Hon.

vs.

MICHIGAN TECHNOLOGICAL
UNIVERSITY, and DEAN L. JOHNSON,
in his individual capacity,
*severally and individually*,

        Defendants.
_____/

Raymond J. Sterling (P34456)
Brian J. Farrar (P79404)
Attorneys for Plaintiff
STERLING ATTORNEYS AT LAW, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
rsterling@sterlingattorneys.com
bfarrar@sterlingattorneys.com
_____/

# COMPLAINT AND JURY DEMAND

Plaintiff Peng Guo, Ph.D., by her attorneys, Sterling Attorneys at Law, P.C., for her Complaint and Jury Demand against defendants submit the following:

### JURISDICTIONAL ALLEGATIONS

1. Plaintiff is an individual residing in Ardmore, Pennsylvania.

2. Defendant Michigan Technological University ("MTU") is a public research university located in Houghton, Michigan, and has an enrollment of approximately 7,200 undergraduate and graduate students.

3. Defendant Dean L. Johnson is the Dean of MTU's School of Business and Economics and, upon information and belief, resides in Houghton, Michigan.

4. Plaintiff brings this action pursuant to Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 USC 216(c) and 217, to enforce the requirements of the Equal Pay Act of 1963 (the "EPA"), codified as Section 6(d) of the FLSA, 29 USC 206(d), Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101, *et seq.*, 42 USC Section 1981 (against Johnson only), and 42 USC Section 1983 (against Johnson only).

5. Defendants are an employer, and plaintiff was their employee, as defined by the FLSA, and the EPA.

6. Defendant MTU was plaintiff's employer, and plaintiff was its employee, as defined by the Elliott-Larsen Civil Rights Act.

7. This Court has federal question jurisdiction of plaintiff's federal claims under 28 USC 1331 because this action arises under the laws of the United States.

8. This Court has supplemental jurisdiction over plaintiff's state law claims under 28 USC 1367(a).

9. Venue is proper under 28 USC 1391(a)(2) and (b)(2) because the unlawful employment actions giving rise to the claims occurred within the Western District of Michigan.

## GENERAL ALLEGATIONS

10. Plaintiff is an Asian woman, born in China, and a permanent resident of the United States.

11. Plaintiff's husband is an American-born, white male.

12. MTU hired plaintiff and her husband in August 2015 as Assistant Professors to teach Accounting in the School of Business and Economics ("SBE").

13. At all relevant times, defendant Johnson was the Dean of the SBE and was plaintiff and her husband's supervisor.

14. Defendant Johnson is responsible for evaluating all faculty in the SBE, determining whether faculty should receive annual raises and how much those raises should be, and also whether faculty achieve tenure.

15. Throughout her employment, plaintiff was an excellent professor with above-average performance in the classroom and in her research publications.

*After plaintiff informed defendant Johnson she was pregnant,*
*Johnson retaliated against her by reducing her annual raise and criticizing her work*

16. MTU has a maternity leave policy that permits faculty members to choose between six weeks of leave, or a semester with reduced duties following the birth of a child.

17. Those faculty members who select the semester with reduced duties option are excused from teaching and service work, and their research duties are reduced by 50%.

18. During the fall 2016 semester, plaintiff notified MTU that she was pregnant and that she was selecting the option to work the spring 2017 semester with reduced duties.

19. Following the notice of pregnancy, in December 2016, plaintiff only received a 1.5% salary raise, while the SBE average raise for that year was 2.52%.

20. On or about January 8, 2017, during what was supposed to be plaintiff's reduced semester, defendant Johnson assigned her service duties such as organizing academic seminars.

21. When plaintiff informed defendant Johnson that she was on maternity leave and was supposed to be excused from these duties, he ignored her.

22. Plaintiff's child was born several days later.

23. On or about February 13, 2017, despite knowing plaintiff was only one month postpartum, and still on maternity leave, defendant Johnson ordered plaintiff to appear for her second-year tenure review.

24. During this review, defendant Johnson was critical of plaintiff's work and questioned plaintiff's decision to take maternity leave.

25. In December 2017, following plaintiff's maternity leave, plaintiff received only a 1.13% salary raise while the SBE average raise for that year was 2.87%.

26. Plaintiff's raise for 2017 was the lowest of any faculty member in the SBE.

27. During plaintiff's third-year review in 2018, defendant Johnson again referenced plaintiff's pregnancy and admonished plaintiff for taking maternity leave the previous year.

28. Plaintiff told defendant Johnson during this review that she felt he was discriminating against her because she is an Asian woman, born in China, and also because she got pregnant and took maternity leave.

*Defendants discriminate against Asian,
foreign-born, and female faculty in the SBE*

29. The SBE, under the direction of defendant Johnson, has fostered an environment in which white, American-born faculty members are treated better

5

than Asian, foreign-born faculty members in regards to the terms and conditions of their employment.

30. MTU pays white, American-born faculty members more on average than it pays foreign-born faculty.

31. Female, foreign-born faculty are the lowest paid group in the SBE.

32. Defendants deny major review or tenure to foreign-born faculty at a higher rate than white, American-born faculty, even though the quality of their work, scholarship, and research is the same.

33. Since 2013, all of the SBE faculty to whom MTU has denied major review or tenure are either foreign-born or non-white.

34. For the years 2017, 2018, and 2019, foreign-born female faculty in the SBE received on average 1.56% annual raises, whereas American-born female faculty received on average 3.29% annual raises.

35. In 2018 and 2019, MTU paid plaintiff's husband, who was the only other Assistant Professor for Accounting, more than it paid plaintiff even though they taught the same classes and performed the same quality of work.

*When plaintiff complained of this discrimination, defendants retaliated against her by denying her tenure and constructively discharging her*

36. During a discussion with defendant Johnson in April 2018, plaintiff expressed concern over SBE's decision to remove "diversity" from its mission statement.

6

37. Plaintiff also complained that MTU's culture of discrimination and lower than average raises for foreign-born faculty was creating high turnover for in the SBE.

38. In December 2018, following her discussion with defendant Johnson, plaintiff received only a 1% salary raise, while the SBE average raise for that year was 1.93%.

39. In December 2018, another Asian female faculty member in the SBE made an anonymous complaint to MTU administrators concerning a culture of discrimination and harassment towards women, particularly Asian women.

40. This anonymous complaint was similar to the allegations plaintiff had been making to defendant Johnson during the preceding months.

41. In January 2019, MTU's Tenure, Promotion, and Reappointment Committee conducted its fourth-year review of plaintiff's work.

42. This is referred to as a "major" review because it determines whether a faculty member achieves tenure in their fifth and final year of consideration.

43. For this reason, the fourth-year review is considered the most important for an Assistant Professor.

44. In a letter to defendant Johnson dated January 30, 2019, the Committee wrote, "[we are] satisfied with [plaintiff's] teaching, service and research performance. We are impressed by her research quality in particular."

45. The Committee voted unanimously to continue plaintiff on the tenure track.

46. Despite this stellar review from the Committee, defendant Johnson wrote to MTU's Provost by letter dated January 31, 2019, and stated that plaintiff's performance was "deficient," and that he did not agree with the Committee's assessment of plaintiff's work.

47. In February 2019, plaintiff met with MTU's Vice President of Diversity and Inclusion and complained that defendant Johnson was discriminating and retaliating against her due to her race, national origin, and also because she took maternity leave.

48. In April 2019, plaintiff continued raising concerns about her discriminatory treatment to various MTU administrators.

49. At that time, MTU's Director of Title IX compliance was also aware of plaintiff's allegations of discrimination and retaliation but did nothing to remedy the situation.

50. As it was clear defendant Johnson was not going to recommend plaintiff for tenure, MTU constructively discharged plaintiff in August 2019.

## COUNT I (as to both defendants)

## VIOLATIONS OF THE EQUAL PAY ACT

51. Plaintiff incorporates the preceding paragraphs by reference.

52. The Equal Pay Act provides, in relevant part, that "No employer … shall discriminate … between employees on the basis of sex by paying wages to employees … at a rate less than the rate at which he pays wages to employees of the opposite sex … for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions …" 29 USC 206(d)(1).

53. Plaintiff and her male counterpart performed jobs requiring equal skill, effort, and responsibility.

54. Plaintiff and her male counterpart performed their jobs under similar working conditions.

55. Defendants pay a wage rate differential in violation of the Equal Pay Act by paying plaintiff less than her male counterpart.

56. Defendants know that by paying plaintiff less than her male counterpart they are in violation of the Equal Pay Act and/or are acting in reckless disregard of the Equal Pay Act.

57. As a direct and proximate result of defendants' conduct, plaintiff has suffered lost compensation and other incidental and consequential damages, including attorney fees.

## COUNT II (as to MTU only)

## RACE/SEX/NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

58. Plaintiff incorporates the preceding paragraphs by reference.

59. Defendant MTU discriminated against plaintiff with respect to the terms, conditions, and privileges of employment due to plaintiff's race, gender, and national origin.

60. Defendant MTU was predisposed to discriminate against plaintiff based on her race, gender, and national origin, and favored white, male, and American-born faculty members over plaintiff.

61. Plaintiff's race, gender, or national origin was a factor in defendant's decision to pay plaintiff less compensation and to constructively discharge her.

62. Defendant MTU's discrimination adversely affected plaintiff's compensation, terms, conditions, and privileges of employment in violation of the Elliott-Larsen Civil Rights Act, MCL 37.2101, *et seq*.

63. As a direct and proximate result of defendant MTU's conduct, plaintiff has suffered and will continue to suffer lost compensation, emotional distress, and other incidental and consequential damages, including attorney fees.

## COUNT III (as to Johnson only)

### RACE DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1866

64. Plaintiff incorporates the preceding paragraphs by reference.

65. Section 1981 of the Civil Rights Act of 1866 prohibits discrimination on the basis of race, color, and ethnicity when making and enforcing contracts.

66. Section 1981 specifically grants all individuals within the United States the same rights and benefits as "enjoyed by white citizens" regarding contractual relationships.

67. Defendant Johnson deprived plaintiff of the same right to make and enforce contracts when he treated plaintiff differently, discriminated against her, paid her less, refused to promote her, and constructively discharged her on the basis of her race.

68. Defendant Johnson was predisposed to discriminate against plaintiff on the basis of her race and acted in accordance with that predisposition.

69. The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of plaintiff.

70. As a direct and proximate result of those actions, the terms, conditions and privileges of plaintiff's employment were adversely affected and she was constructively discharged.

## COUNT IV (as to Johnson only)

### DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1871

71. Plaintiff incorporates the preceding paragraphs by reference.

72. Plaintiff is a "citizen" within the meaning of The Civil Rights Act of 1871, 42 USC 1983.

73. Defendant Johnson is a "person" within the meaning of Section 1983.

74. Defendant Johnson is being sued in his individual capacity.

75. At all relevant times, defendant Johnson was acting under "color of law."

76. By discriminating against plaintiff due to her race, national origin, and gender, defendant Johnson caused plaintiff to be deprived of rights, privileges, and/or immunities secured by the Constitution and federal laws.

77. The rights at issue in this lawsuit were clearly established at the time of defendant Johnson's unlawful conduct.

78. The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of plaintiff.

79. As a direct and proximate result of the defendants' wrongful and discriminatory treatment of plaintiff, plaintiff has suffered injuries and damages, including, but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

WHEREFORE, plaintiff respectfully requests that this Honorable Court enter judgment against defendants, in whatever amount plaintiff is found to be entitled, together with punitive damages, equitable relief, interest as an element of damages, statutory interest, and attorney fees and costs.

## JURY DEMAND

Plaintiff Peng Guo, Ph.D., by her attorneys Sterling Attorneys at Law, P.C., demands a trial by jury.

                Respectfully submitted,

                STERLING ATTORNEYS AT LAW, P.C.

                By:  /s/Brian J. Farrar
                       Raymond J. Sterling (P34456)
                       Brian J. Farrar (P79404)
                       Attorneys for Plaintiffs
                       33 Bloomfield Hills Pkwy., Ste. 250
                       Bloomfield Hills, MI 48304
Dated:  January 12, 2021     (248) 644-1500