UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PENG GUO, PHD,

    Plaintiff,

v.

MICHIGAN TECHNOLOGICAL
UNIVERSITY,

    Defendant.
_____/

Case No. 2:21-cv-9

HON. JANE M. BECKERING

## OPINION AND ORDER

On September 12, 2024, a jury found in favor of Plaintiff Peng Guo and against Defendant Michigan Tech University ("MTU") on Plaintiff's pregnancy discrimination claim brought under Michigan's Elliot Larsen Civil Rights Act ("ELCRA"). Before the Court is Defendant's Motion for New Trial and/or Directed Verdict (ECF No. 144) and Plaintiff's Motion for Attorney Fees, Costs, and Interest (ECF No. 140). For the reasons stated below, the Court will deny Defendant's motion and grant in part and deny in part Plaintiff's motion.

**I.    BACKGROUND**

From 2015 until her resignation in 2019, Plaintiff was an assistant professor of accounting at MTU. In January 2021, Plaintiff initiated this action against MTU and Dean L. Johnson, alleging an Equal Pay Act claim, a constructive discharge claim, retaliation claims, race discrimination claims, national origin discrimination claims, gender discrimination claims, and pregnancy discrimination claims (ECF No. 5). After discovery, Defendants moved for summary judgment (ECF No. 63). On July 25, 2023, U.S. District Judge Janet T. Neff granted Defendants'

motion for summary judgment on all claims except the pregnancy discrimination claims against MTU (ECF No. 71).

As the case proceeded towards trial, MTU filed three motions in limine seeking to exclude from trial (1) any reference to wage disparity claims (ECF No. 88); (2) any reference to constructive discharge and to attendant claims of adverse actions (ECF No. 92); and (3) any reference to Plaintiff's tenure review (ECF No. 96). On July 10, 2024, the Court denied MTU's motions (ECF No. 101). The Court found that the evidence was relevant to show discriminatory animus and economic damages (*id.* at PageID.627-629). The Court also determined that Plaintiff had not demonstrated that the evidence was unduly prejudicial (*id.*).

A week before trial, U.S. Magistrate Judge Maarten Vermaat held a Final Pretrial Conference (ECF No. 113). At this conference, the parties debated whether a pregnancy discrimination claim under ELCRA remained in the case. After hearing argument from both parties, Magistrate Judge Vermaat ruled that Plaintiff did not properly plead a pregnancy discrimination claim under ELCRA and the only remaining claim for trial was a pregnancy discrimination claim under Title VII of the Civil Rights Act of 1964.

Plaintiff subsequently objected to Magistrate Judge Vermaat's ruling (ECF No. 114), and on September 3, 2024, this Court granted Plaintiff's objection (ECF No. 123). The Court found that Plaintiff sufficiently pled a pregnancy discrimination claim under ELCRA and that the same questions of fact as to whether Defendant discriminated against Plaintiff due to her pregnancy under Title VII applied to Plaintiff's ELCRA pregnancy claim (*id.* at PageID.755-756). The case, therefore, proceeded to trial on pregnancy discrimination claims under both ELCRA and Title VII.

The trial began on September 9, 2024. The jury heard testimony over three days from eight different witnesses, including Plaintiff and several former and current MTU employees (ECF Nos.

129, 132, & 133).  Following Plaintiff's case-in-chief, MTU moved for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure.  The Court denied the motion on the record (ECF No. 139).

On September 12, 2024, the jury reached a verdict and found in favor of Plaintiff on the ELCRA claim but not on the Title VII claim (ECF No. 135).  The jury awarded Plaintiff damages in the total amount of $205,000, consisting of $5,000 in past economic damages; $100,000 in past non-economic damages; and $100,000 in future non-economic damages (*id.* at PageID.869).  The Court then entered judgment to that effect on the same day (ECF No. 137).

## II.    JUDGMENT AS A MATTER OF LAW

Under Rule 50(a) of the Federal Rules of Civil Procedure, the Court may grant a party judgment in its favor "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  FED. R. CIV. P. 50(a)(1).  If the Court denies the Rule 50(a) motion and judgment has entered, "the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."  FED. R. CIV. P. 50(b).

The Court will grant a renewed motion for judgment under Rule 50(b) "only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party."  *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007)).  "The evidence should not be weighed, and the credibility of the witnesses should not be questioned.  The judgment of this court should not be substituted for that of the jury . . . ."  *Williams v. Nashville Network*, 132 F.3d 1123, 1130-31 (6th Cir. 1997).

MTU argues that the Court should grant its renewed motion for judgment as a matter of law because Plaintiff failed to provide any evidence of (1) an adverse employment action, or (2) a causal nexus between some adverse employment action and Plaintiff's maternity leave.[1]

"An adverse employment action is a 'materially adverse change in the terms or conditions of employment because of the employer's actions.'" *Buggs v. FCA US, LLC*, No. 22-1387, 2023 WL 2468378, at *3 (6th Cir. Jan. 20, 2023) (quoting *Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 593 (6th Cir. 2007)). "Materially adverse changes in the terms and conditions of employment include 'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 625 (6th Cir. 2013) (quoting *Michael* 496 F.3d at 593–94). "[D]e minimus employment actions are not materially adverse and, thus, not actionable." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461-62 (6th Cir. 2000).

This case proceeded to trial on two alleged adverse actions—receiving a lower merit raise and losing the Ten Haken fellowship. Plaintiff testified that her 1.13% raise was one of the lowest raises in the MTU's College of Business. Her testimony was consistent with Dr. John Daniel Eshleman, who testified that he received a 2.24% raise. Similarly, Plaintiff testified that her Ten Hakken fellowship was not renewed. As both Judge Neff and this Court previously held, these

---

[1] Plaintiff argues that MTU waived its right to seek judgment as a matter of law by failing to move again at the close of proofs. Although MTU did not renew its Rule 50(a) motion after the close of proofs, the current version of Rule 50(b) does not require it to do so. "Rule 50(b) was amended in 2006 'to permit renewal of any Rule 50(a) motion for judgment as a matter of law, deleting the requirement that a motion be made at the close of all the evidence.'" *Kelmendi v. Detroit Bd. of Ed.,* No. 12-14949, 2017 WL 1502626, at *16 (E.D. Mich. April 27, 2017) (quoting FED. R. CIV. P. 50 Advisory Committee Note to 2006 Amendment). Therefore, MTU did not waive its right to seek judgment as a matter of law under Rule 50(b).

alleged acts, viewed in the light most favorable to Plaintiff, are more than *de minimis* and can constitute an adverse action in the employment context.

Furthermore, the testimony at trial established that there was hostility between Dean Johnson and Plaintiff. Dean Johnson initially attempted to make Plaintiff fulfill her service requirement while on maternity leave. According to Plaintiff and Robert Hutchinson, Dean Johnson asked Plaintiff to deliver a pizza to a committee meeting only a few weeks after her C-section. Although this may have been a misunderstanding of the policy, further testimony suggests that Dean Johnson continued to be hostile against Plaintiff in response to her maternity leave. For example, according to Plaintiff, Dean Johnson told her that she had plenty of free time as a mother when discussing professional development. This is just some of the evidence that could infer discriminatory animus. Viewing the record in its entirety and in the light most favorable to Plaintiff, the Court finds that reasonable minds could differ on the ultimate question of discrimination. Accordingly, MTU is not entitled to judgment as a matter of law.

### III.   NEW TRIAL

Under Rule 59 of the Federal Rules of Civil Procedure, "a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 606 (6th Cir. 2018) (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996)).

MTU contends that the Court should order a new trial because the Court erred in denying MTU's motions in limine and allowing Plaintiff to proceed to trial on the state law pregnancy discrimination claim. These arguments are the same arguments that MTU previously made before

trial. The Court addressed those arguments in the July 10, 2024 Memorandum Opinion and Order (ECF No. 101) and the September 3, 2024 Memorandum Opinion and Order (ECF No. 123). The Court is not persuaded that it erred in either ruling. The evidence at issue in the motions of limine was relevant to discriminatory animus and economic damages. The probative value of the evidence did not substantially outweigh "its prejudicial nature" (ECF No. 145 at PageID.1002). Furthermore, any prejudice was cured by the limiting jury instruction at trial. Similarly, the Court continues to hold that Plaintiff did enough to plead a pregnancy discrimination claim under ELCRA. Accordingly, MTU's request for a new trial is denied.

Finally, MTU also requests a new trial based on the verdict being against the weight of evidence. "In finding that a jury's verdict was against the weight of the evidence, the judge must, to some extent at least, substitute his judgment of the facts and the credibility of the witnesses for that of the jury." *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 606 (6th Cir. 2018) (cleaned up; citation omitted). Although Rule 59's weight-of-the-evidence standard differs from Rule 50's sufficiency-of-the-evidence standard, MTU makes no attempt to differentiate between the two standards. Accordingly, the Court denies MTU's weight-of-evidence argument for the same reasons discussed above.

## IV.   ATTORNEY FEES, COSTS AND INTEREST

Plaintiff requests the Court to award her (a) $204,037.50 in attorney's fees, (b) $19,941.25 as a fee enhancement; (c) 17,277.43 in costs; (d) pre-judgment interest from January 12, 2021; and (e) post-judgment interest beginning September 12, 2024. The Court addresses each in turn.

### A. Attorney's Fees

Plaintiff seeks legal fees in the amount of $204,037.50. ELCRA permits, but does not require, the Court to award attorney fees to a successful plaintiff. Mich. Comp. Laws § 37.2802.

When awarding attorney fees, the Court must first calculate the lodestar amount. *Smith v. Khouri*, 751 N.W.2d 472, 475 (Mich. 2008). The lodestar amount is the sum of the reasonable hourly rate multiplied by the reasonable number of hours spent. To calculate the reasonable hourly rate, the Court must determine "the fee customarily, charged in the locality for similar legal services." *Id.* at 479. The reasonable hourly rate is then multiplied by the number of hours reasonably expended to derive a "baseline figure." *Id.* at 480. Finally, the Court must consider the following factors to decide if any adjustment to the "baseline figure" is warranted:

(1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

(2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

(3) the amount in question and the results obtained,

(4) the expenses incurred,

(5) the nature and length of the professional relationship with the client,

(6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

(7) the time limitations imposed by the client or by the circumstances, and

(8) whether the fee is fixed or contingent.

*Pirgu v. United Servs. Auto. Ass'n*, 884 N.W.2d 257, 264 (Mich. 2016)

Here, Plaintiff asks for fees for 569.75 hours by Attorney Farrar at an hourly rate of $350.00 and for 9.25 hours by Attorney Sterling at an hourly rate of $500.00. The number of hours is not in dispute. MTU argues that that the reasonable hourly rate for each attorney should be $250.00.

Attorney Farrar is an attorney with 14 years of experience located in Oakland County (ECF No. 140-6). His experience includes acting as lead trial counsel in approximately 12 federal jury trials in Michigan and New York (*id.*). Attorney Sterling is an attorney with 40 years of experience (ECF No. 140-8).

Although both parties rely on the State Bar Michigan 2020 Economics of Law Practice Report, the 2023 Report is more relevant because a significant amount of this case—including summary judgment and trial—occurred closer to 2023 than 2020. The most relevant locality in this case is Marquette County because this is a Northern Division case. However, the Court also held several hearings in Grand Rapids (Kent County). According to the 2023 Report,[2] the median billing rate in Marquette County is $263 per hour, the 75th percentile rate is $310 per hour, and the 95th percentile rate is $350 per hour. The median billing rate for Kent County is $364 per hour, the 75th percentile rate is $374 per hour, and the 95th percentile rate is $620 per hour. In the employment law field of practice, the median billing rate is $400 per hour, the 75th percentile rate is $475 per hour, and the 95th percentile rate is $650 per hour. Based on these figures, the Court finds that the requested hourly rates for Attorney Farrar and Attorney Sterling are reasonable.

The Court must also consider the factors provided by the Michigan Supreme Court. Related to the factors, Plaintiff seeks a 10% fee enhancement with respect to Attorney Farrar's billings based on the length and difficulty of this case. Although this case lasted for over three years, it was not an unusually complex employment discrimination case. The Court finds that neither reason justifies any enhancement. Furthermore, MTU's response brief adequately summarizes each factor (ECF No. 142 at PageID.983-988). The Court has considered each of the eight factors and finds that no adjustment is warranted. Accordingly, the Court awards Plaintiff $204,037.50 in attorney fees.

---

[2] State Bar of Michigan, Economics of Law Survey Results 2023 (https://www.michbar.org/file/pmrc/pdfs/2_2023EOL_SurveyResults.pdf).

## B. Costs

Plaintiff seeks costs in the amount of $17,277.43, which includes $6,431.58 that was previously submitted in a proposed bill of costs. ELCRA permits the Court to award "all or a portion of the costs of litigation . . . if the court determines that the award is appropriate." Mich. Comp. Laws § 37.2802. Here, MTU does not oppose the requested amount. Accordingly, the Court awards $17,277.43 in costs and dismisses Plaintiff's Proposed Bill of Costs as moot.

## C. Interest

Plaintiff seeks pre-judgment interest under Mich Comp. Laws 600.6013(6) and post-judgment interest under 28 U.S.C. § 1961. MTU does not dispute that Plaintiff is entitled to pre-judgment interest, but it argues that post-judgment interest is not warranted because Plaintiff did not prevail on any federal claims.

Section 1961(a) provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). When construing the statue, the Sixth Circuit stated:

> We agree with defendant that federal courts exercising supplemental jurisdiction over state-law claims should apply the rate derived from § 1961(a) to money judgments rendered for those state-law claims. The plain language of § 1961(a) compels this result. The statute states, "Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated [by a designated formula]. . . ." 28 U.S.C. § 1961(a) (emphasis added). We decline to engage in the verbal gymnastics necessary to render § 1961(a) inapplicable to judgments for state-law claims entertained by a federal court.

*Reed v. Country Miss, Inc*, 57 F.3d 1070 (6th Cir. 1995) (unpublished).

This Court agrees with *Reed*. The plain language of § 1961(a) instructs "federal courts exercising supplemental jurisdiction over state-law claims [to] apply the rate derived from § 1961(a) to money judgments rendered for those state-law claims." *Id*. Therefore, the Court will award Plaintiff post-judgment interest.

9

## V. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for New Trial and/or Directed Verdict (ECF No. 144) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorney Fees, Costs and Interest (ECF No. 140) is GRANTED IN PART and DENIED IN PART.

An amended judgment will issue.


Dated: January 13, 2025                                    /s/ Jane M. Beckering
                                                          JANE M. BECKERING
                                                          United States District Judge